**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON**

**CIVIL ACTION NO. 03-243-DLB**

**JENNIFER L. FISHER**                                                     **PLAINTIFF**

vs.                      **<u>MEMORANDUM OPINION & ORDER</u>**

**RIZZO BROTHERS PAINTING
CONTRACTORS, INC.**                                         **DEFENDANT**

*********************************

Plaintiff filed this action after Defendant, her former employer, failed to re-hire her, alleging violations of the Family and Medical Leave Act (FMLA), Pregnancy Discrimination Act (PDA) and related state statute.[1] Defendant counterclaimed, alleging fraud and unjust enrichment, and characterizing the instant action as "frivolous." The Court has jurisdiction under 28 U.S.C. § 1331.

This matter is presently before the Court upon Defendant's motion for summary judgment (Doc. #41). Plaintiff filed a response (Doc. #52), to which Defendant replied (Doc. #56). Following a telephone conference on October 14, 2005, the Court permitted Plaintiff to file supplemental briefing limited to the issue of whether Defendant was an "employer" for FMLA purposes. (Doc. #60).

Plaintiff has also moved for summary judgment on Defendant's counterclaims (Doc. #43-44). Defendant filed a response (Doc. #48), and the time for filing a reply has expired.

---

[1] Plaintiff subsequently amended her complaint to add a common law claim of promissory estoppel. (Doc. #40).

1

Both motions are now ripe for adjudication.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working for Defendant as a temporary employee in February 2000. She subsequently attained full-time status, and at all times relevant herein, was employed as an administrative assistant (specifically, an accounts payable/receivable clerk). Defendant is a family-owned and operated commercial/industrial painting business. Founded in 1954, the company is currently headed by E.J. Rizzo (CEO) and his sons, Peter (President) and Paul (Vice President).

In Spring 2002, Plaintiff learned that she was pregnant. She informed her direct supervisor, Debbie Marks, as well as Pete and Paul Rizzo, and expressed her intention of working until her due date, which was January 2, 2003. Plaintiff claims that, in response, Paul Rizzo stated that in it's 54 years of business, Defendant had never had a pregnant (female) employee. (Plaintiff's depo, p. 52). She also claims that: 1) Ms. Marks repeatedly made comments insinuating that after the baby was born, Plaintiff would not want to return to work, and 2) her pregnancy was viewed as an "inconvenience" by her co-workers. In general, Plaintiff alleges that her co-workers' attitudes towards her changed upon learning that she was pregnant, and that she was subjected to a hostile work environment.

In Fall 2002, Plaintiff began experiencing complications related to her pregnancy. She was hospitalized for three days in October for gall bladder problems, and her physician, Dr. Stephen Hensley, advised her to take a leave of absence from her job. On October 18th, Plaintiff met with Ms. Marks and the Rizzo brothers to discuss her "leave options." Plaintiff was informed that Defendant did not offer short-term disability benefits, and that any leave would be unpaid. Plaintiff claims that she was never informed that the

unpaid leave was being offered under the auspices of the FMLA, and does not recall whether she was told that the unpaid leave was finite in duration and accompanied by an automatic right to reinstatement. (Plaintiff's depo, p. 13).[2] Debbie Marks, however, testified that she explained Defendant's "family leave" policy to Plaintiff and directed her to the relevant section of the Employee Manual. (Marks depo, p. 23).

After discussing these options with her husband, Plaintiff determined that she would be unable to take unpaid leave, due to financial constraints. On October 19th, she met with Ms. Marks and the Rizzo brothers for a second time and asked whether she could be "laid off" so she could collect unemployment compensation during her leave.[3] Plaintiff claims that either Ms. Marks or one of the Rizzo brothers agreed. She also claims that she was assured (by whom, she is unsure) that she could return to her job after her the birth of her baby. As evidence of this fact, Plaintiff alleges that after commencing her leave, she continued to receive dental benefits[4] and regularly visited Defendant's facility; her co-workers threw her a birthday party in November; she was informed that Defendant had purchased a new computer for her use when she returned; and she attended the company's Christmas party in December.

---

[2]However, when Plaintiff was asked whether "there was some option that was unpaid leave with a return to work," she responded "yes." (Plaintiff's depo, p. 14).

[3]When Plaintiff's physician learned that she was working despite his verbal orders to the contrary, he faxed Defendant a letter dated October 17, 2002, indicating that she was unable to work due to complications, and would not be able to return until approximately six weeks post-partum.

[4]Defendant claims that this was merely an administrative oversight. Specifically, Ms. Marks testified that she should have terminated these benefits when Plaintiff was laid off. (Marks' depo, p. 44).

3

The following facts are undisputed: 1) Plaintiff's last day of employment was October 19, 2002; 2) Plaintiff immediately filed an application for unemployment compensation with Kentucky's Cabinet for Workforce Development, 3) Defendant did not challenge, or oppose, Plaintiff's application for unemployment benefits, and 4) Plaintiff began receiving unemployment compensation benefits on a weekly basis, effective October 20, 2002.

Plaintiff gave birth to her daughter, Danielle, on December 31, 2002. Plaintiff contacted Pete Rizzo on February 12, 2003 to inform him that she was having gall bladder surgery on March 10th and planned to return to work one week later on March 17th. In response, Rizzo told her that business was too slow and he was unable to "re-hire" her. The following month, however, Defendant hired Judith Leidy to perform clerical duties. On April 1, 2003, Plaintiff received a letter from Defendant informing her of her right to continued health coverage under COBRA. The letter also indicated that Plaintiff's last date of employment was March 3, 2003.[5] On April 29, Plaintiff received two checks, totaling $696.00, for vacation time she had accrued while working for Defendant.

Plaintiff filed an EEOC charge, alleging discrimination based upon sex, on May 20, 2003. She received a "right to sue" letter on August 6, and filed the instant action on November 3, 2003.

## II. ANALYSIS

**A.   Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[5]Defendant (specifically Ms. Marks) claims that this, too, was a mistake.

4

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

### B. Discussion

Defendant claims that Plaintiff cannot establish a prima facie "interference" claim under the FMLA because: 1) she voluntarily chose to forego unpaid FMLA leave, and 2) any right to reinstatement under the Act is predicated on taking leave, which Plaintiff failed to do. Defendant also claims that Plaintiff's FMLA claim must fail because: 1) she was not an "eligible employee" at the time of any alleged violation, and 2) she did not seek to return to work until approximately 16 weeks after being "laid off." Finally, Defendant argues that Plaintiff's FMLA "discrimination/retaliation" and liquidated damages claims, federal and state law pregnancy discrimination claims, and promissory estoppel claim are equally meritless.

In her response, Plaintiff states that the basis of her FMLA "interference" claim is Defendant's failure to inform her of her substantive rights to twelve weeks of unpaid leave

5

and reinstatement upon return.[6] She also claims that the fact that her "leave" amounted to more than the statutory maximum is not dispositive in light of the nature of her claim. Finally, she claims that she relied to her detriment on Defendant's promise to re-hire her following the birth of her baby.

In its reply, Defendant argues that, even assuming it interfered with Plaintiff's FMLA rights by failing to properly inform her of them, she has not suffered any prejudice as a result because: 1) she testified that there was "no way" she could afford to take unpaid leave, and 2) she did not seek re-employment until approximately sixteen weeks after requesting to be "laid off."

### 1. FMLA claim

The FMLA was enacted to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons ... in a manner that accommodates the legitimate interests of employers." 29 U.S.C. §§ 2601(b)(1)-(3). To further these objectives, the FMLA affords employees a total of twelve weeks of leave because of the birth of a child and/or because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). In protection of these rights, § 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." "'Interfering with' the exercise of an employee's

---

[6]Although Plaintiff styled her FMLA claims as "interference" (2615(a)(1)) and "retaliation" (2615(a)(2)) claims in her original and amended complaints, a careful reading of her allegations reveal that her claims are properly designated "interference" claims only. This is confirmed by Plaintiff's response to Defendant's motion for summary judgment, which makes no mention of a "retaliation" claim.

rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

Plaintiff claims that Defendant unlawfully "interfered" with the exercise of her FMLA rights by failing to advise her of the right to unpaid leave, and reinstatement upon return. To prevail on an FMLA interference claim, Plaintiff must establish that (1) she is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) Defendant is an "[e]mployer," *id.* § 2611(4); (3) she was entitled to leave under the FMLA, *id.* § 2612(a)(1); (4) she gave Defendant notice of her intention to take leave, *id.* § 2612(e)(1); and (5) Defendant denied her FMLA benefits to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

As an initial matter, the Court must address certain threshold arguments advanced by Defendant. First, Defendant maintains that it does not qualify as an "employer" under the statute because it did not employ the requisite number of employees at the relevant times herein.[7] Second, Defendant maintains that Plaintiff does not qualify as an "eligible employee" because she "never requested unpaid leave ... prior to being terminated ...." (Doc. #41, p. 10). As the following discussion demonstrates, Defendant's arguments are without merit.

Under the FMLA, an "employer" is defined as "any person ... who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year ...." 29 U.S.C. § 2611(4)(A)(i). This determination is made when the employee gives notice of the need for leave. 29 C.F.R. § 825.110(f).

---

[7]The parties agree that Plaintiff indicated a need for leave sometime in 2002; therefore, under the statute, the relevant years are 2001 and 2002.

Similarly, an employee's eligibility is not affected by any subsequent change in the number of employees at the employer's worksite. *Id*.

Although this issue was raised as an affirmative defense in Defendant's answer, it was not raised again until Defendant filed its reply memorandum and the supporting affidavit of E.J. Rizzo. According to the affidavit (Doc. #61), dated October 13, 2005, although Defendant previously admitted during discovery that it employed at least 50 employees for each working day during each of 20 or more calendar weeks in 2001, Defendant now retracts that admission, citing a mathematical error. In particular, Defendant claims that there were several days throughout the year where employees were absent; therefore, in 2001 there were only 8 weeks during which it employed 50 people *on each day* of the week, and in 2002 there was just 1 week during which it employed 50 people *on each day* of the week. Defendant's argument, however, unduly constrains the protections afforded by the FMLA, as it fails to appreciate that "[a]ny employee whose name appears on the employer's payroll will be considered employed each working day of the calendar week, and must be counted whether or not any compensation is received for the week." *See* 29 C.F.R. § 825.105(b).[8]

Defendant's argument that Plaintiff was not an "eligible employee" at the time she requested FMLA leave is equally untenable. In support, Defendant argues that "[b]ecause [Plaintiff] never requested unpaid leave (and in fact rejected the notion of unpaid leave) prior to being terminated from [Defendant] and collecting unemployment, she has no ability

---

[8]29 C.F.R. § 825.111(c) also states that the determination of how many employees are employed within 75 miles of the worksite of an employer is based on the number of employees maintained on the payroll, not present and accounted for on any particular day.

8

to assert a claim under the FMLA." (Doc. #41, p. 10). In support, Defendant relies on *Brohm v. JH Properties, Inc.*, 149 F.3d 517 (6th Cir. 1998). In *Brohm*, the Sixth Circuit held that an employee who was terminated before he requested relief under the FMLA could not establish a claim under the statute. *Id*. at 523. Similarly, in *Hammon v. DHL Airways, Inc.*, 165 F.3d 441 (6th Cir. 1999), the court stated that, "... an employee cannot bring a claim under the FMLA unless he notifies his employer of his condition and requests relief during his employment ...." *Id*. at 451.

In the instant case, the record reveals that Plaintiff met with Ms. Marks and the Rizzo brothers on two different occasions in mid-October. During the first meeting, Plaintiff relayed Dr. Hensley's directive that she cease working due to complications with her pregnancy, and was, in turn, informed that Defendant did not offer short-term disability benefits, but did offer unpaid leave. It was not until the following day, after discussing her options with her husband, that Plaintiff requested to be "laid off." Therefore, unlike *Brohm* and *Hammon*, Plaintiff imparted sufficient information to Defendant about her condition and need for leave before severing (whether permanently or temporarily) their employment relationship. At the time of the alleged violation, therefore, Plaintiff was an "eligible employee" under the FMLA.

The crux of Plaintiff's "interference" claim is that Defendant failed to properly advise her of her substantive rights under the FMLA after she apprised it of her need for leave. The Sixth Circuit has held that such allegations are sufficient to sustain an interference claim. *See Arban v. West Pub. Co.*, 345 F.3d 390, 401 (6th Cir. 2003) (stating that in an "interference" case, "the issue is simply whether the employer provided its employee the entitlements set forth in the FMLA–for example, a twelve-week leave or reinstatement after

taking a medical leave"); *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 454 (6th Cir. 2005) (employer discouraged employee from taking statutory leave by failing to respond to her requests and inform her of her eligibility to twelve weeks of maternity leave under the Act). As detailed more fully above, a genuine issue of material fact exists regarding whether Defendant properly advised Plaintiff of her FMLA rights. Therefore, summary judgment is inappropriate.[9]

Defendant argues that, even if the foregoing genuine issue of material fact exists, Plaintiff cannot sustain an "interference" claim because she has testified unequivocally that she was financially unable to take unpaid leave.[10] Employers who violate § 2615 are "liable to any eligible employee affected" for damages and "for such equitable relief as may be appropriate." 29 U.S.C. § 2617(a)(1). In *Cavin,* 346 F.3d at 726, the Sixth Circuit stated that "[e]ven when an employee proves that his employer violated [section] 2615, [section] 2617 provides no relief unless the employee has been prejudiced by the violation." In cases where prejudice is shown, the employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). *Cavin,* 346

---

[9]The only undisputed fact is that Plaintiff was offered unpaid leave. Whether she was informed of her rights to twelve weeks of leave and reinstatement upon return, and whether she was told that these rights were afforded under the FMLA, are disputed facts.

[10]Defendant also relies on a portion of Plaintiff's deposition testimony where she conceded, somewhat unwittingly, that even if Defendant had not told her that she could return to her job following the birth of her baby, she would not have done anything differently. (Plaintiff's depo pp. 19-25).

F.3d at 726. The remedy is, therefore, tailored to the harm suffered. *Id.* (citing *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 88-90 (2002)).

Defendant maintains that Plaintiff cannot establish that she was prejudiced by any alleged violation because, after discussing her options with her husband, she determined that she was unable to take unpaid leave due to financial constraints. Therefore, Defendant argues that even if it offered Plaintiff FMLA leave as it was required to do, she would not have availed herself of it. This argument, however, does not account for the statutory entitlement to reinstatement upon return. On that point, Defendant notes that, per her physician's orders, Plaintiff did not seek to return to work until approximately 16 weeks after requesting to be "laid off," which is more than the statutory maximum.

Although the Sixth Circuit has held that an employee who is unable to return to work within twelve weeks has no remedy under the FMLA, *see Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784-85 (6th Cir. 1998), the Court concludes that it would be inappropriate to strictly apply that holding in this case for several reasons. First, Plaintiff has alleged that she was not advised of her FMLA rights, including the total amount of available leave. Second, it is unclear whether, had Plaintiff been advised of her FMLA rights, she *could have* returned to work after the twelve-week leave. Defendant argues that the fact that Plaintiff (per her physician's orders) *did not* return within the maximum allowable time is dispositive. The Court disagrees, especially where there is evidence that Plaintiff initially disregarded her physician's directive to stop working in October 2002. For these reasons, the Court concludes that summary judgment on Plaintiff's FMLA claim is inappropriate. Defendant's motion on that basis is, therefore, **DENIED**.

### 2. PDA and state law discrimination claim

Defendant also argues that Plaintiff cannot sustain a prima facie case of pregnancy discrimination because she suffered no adverse employment action. The Court, however, agrees with Plaintiff that Defendant's failure to re-hire/reinstate her constitutes an adverse employment action under the PDA. *See Kocak*, 400 F.3d 466. Therefore, summary judgment on these claims is also **DENIED**.

### 3. Defendant's counterclaims

Plaintiff has moved for summary judgment on Defendant's counterclaims of fraud, unjust enrichment, and frivolous action. In support of its counterclaims, Defendant argues that Plaintiff: 1) misrepresented her intention to not invoke her FMLA rights, 2) received a benefit (unemployment compensation) at it's expense/detriment (increased premiums), and 3) brought this action in bad faith. The first two claims (fraud and unjust enrichment) are factually intertwined with Plaintiff's claims and should not be dismissed. The "frivolous action" claim, however, warrants a closer look - legally and factually. First, Defendant has failed to cite, and the Court has failed to find, any case law that recognizes a separate cause of action for "frivolous action" in a civil case such as this.[11] Second, the factual basis for Defendant's "frivolous action" claim - i.e., that Plaintiff was not an "eligible employee" and has no standing under the FMLA - is unsupported by the record as discussed above. Therefore, Plaintiff's motion for summary judgment is **GRANTED** as to Defendant's "frivolous action" counterclaim and **DENIED** as to Defendant's fraud and unjust enrichment counterclaims.

---

[11] In its response to Plaintiff's motion for summary judgment, Defendant cites only to cases upholding a district court's inherent power to award attorneys fees.

### III. CONCLUSION

In accordance with the above,

**IT IS ORDERED** that:

(1) Defendant's motion for summary judgment (Doc. #41) be, and hereby is, **DENIED**;

(2) Plaintiff's motion for summary judgment (Doc. #43) be, and hereby is, **GRANTED IN PART, DENIED IN PART**.

This 7th day of December, 2005.

Signed By:
**David L. Bunning**
United States District Judge

G:\DATA\Opinions\2-03-243-FisherMSJ.wpd